UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KEVIN T. JOHNSON                                              CIVIL ACTION

VERSUS                                                        NO. 09-2516

PARISH OF JEFFERSON, ET AL.                                   SECTION: "B"(1)

## REPORT AND RECOMMENDATION

Plaintiff, Kevin T. Johnson, a state prisoner, filed this *pro se* complaint pursuant to 42 U.S.C. § 1983. He has named as defendants the Parish of Jefferson, Judge Fred S. Bowles, Judge H. Charles Gaudin, Judge Charles Grisbaum, Judge Edward A. Dufresne, Jr., Judge Thomas C. Wicker, Jr., Judge Sol Gothard, Judge James L. Canella, Judge Thomas J. Kliebert, Judge Thomas F. Daley, Judge Susan M. Chehardy, Judge Marion F. Edwards, Judge Clarence E. McManus, Judge Walter J. Rothschild, Peter J. Fitzgerald, Jerrold Peterson, Kathi Workman, Carol Treuting, "Tina Doe," "Roz Doe," Cheryl Landrieu, Jennifer Cooper, and Leslie Langhetter.[1] In this lawsuit, plaintiff

---

[1] Plaintiff indicates in the complaint that the individuals named as defendants are being sued in their individual capacities, and this opinion therefore addresses only individual-capacity claims. However, out of an abundance of caution, the Court notes that any official-capacity claims against these defendants for damages would likewise be barred. The defendants are officials and employees of the Louisiana Fifth Circuit Court of Appeal. Any judgment against them in their official capacities would be satisfied out of the state treasury. La.Rev.Stat.Ann. § 13:5108.1. Accordingly, any such official-capacity claims against them would in reality be claims against the state itself, and, therefore, would be barred by the Eleventh Amendment. See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188 (5th Cir. 1986); see also Wallace v. Texas Tech University, 80 F.3d 1042, 1047

claims that he was denied his constitutional rights by the failure of the judges and employees of the Louisiana Fifth Circuit Court of Appeal to follow the applicable provisions of state law when denying his *pro se* post-conviction writ application.

## I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or

---

n.3 (5th Cir. 1996) ("Suits against state officials in their official capacity are considered to be suits against the individual office, and so are generally barred as suits against the state itself."); Doris v. Van Davis, Civ. Action No. 08-4138, 2009 WL 382653, at *2 (E.D. La. Feb. 12, 2009). Further, state officials or employees in their official capacities are not "persons" amenable to suit for damages under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 69 n.24 (1997).

> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S. Ct. 1230 and 1231 (2008).

## II. Factual Background

The instant case is one of several filed in this Court as a result of allegations which came to light upon the suicide of Jerrold Peterson, the former Central Staff Director of the Louisiana Fifth Circuit Court of Appeal.

The Louisiana Constitution provides that each state Court of Appeal "shall sit in panels of at least three judges selected according to rules adopted by the court." La. Const. art. V, § 8(A). According to plaintiff, the judges of the Louisiana Fifth Circuit Court of Appeal instituted a policy

3

in 1994 to circumvent that constitutional requirement with respect to *pro se* prisoner post-conviction filings. Plaintiff has attached to his complaint what he purports are minutes from an en banc meeting of that court's judges. In pertinent part, those minutes provide:

> Effective immediately, Judge Dufresne will handle all pro se writ applications and will not be included in the handling of regular writ applications. Special or unusual pro se applications will be submitted to a regular panel.

Rec. Doc. 4, Exhibit 1, Minutes dated February 8, 1994. Plaintiff also attaches to his complaint what he purports is a letter written to the court's judges by Peterson shortly before his suicide in which he summarized the *pro se* writ processing procedure. In that letter, Peterson states:

> While my integrity is challenged on the basis of one case, you completely ignore your own integrity in the handling of pro se criminal writ applications. For probably the past 10 years, not one criminal writ application filed by an inmate pro se has been reviewed by a Judge on the Court. I prepared the ruling on each of those writ applications, and they were signed by a Judge without so much as a glance at the application. In fact, two of the judges on the writ panel never even knew the pro se application was filed, much less aware of the application's contents. When the pro se application arrived in the mail, I opened it, prepared a ruling, and sent it to the Clerk's Office for filing. When the application returned to the Central Staff after filing, the ruling was already prepared. It was typed on the application and the application was signed by a Judge without so much as a glance. The total turnaround time was usually one or two days. It was obvious that these pro se criminal writ applications were not being reviewed because of the quick turnaround time. Moreover, although research memos are prepared for counseled criminal writ applications, a research memo for a pro se criminal writ application has not been prepared for probably 10 years. You were more than content to let me handle all pro se writs so you would not have to bother with them. Also, the large volume of pro se criminal writ applications inflated the Court's workload figures – even though no judge was involved in the handling of the writ (beyond signing a name).

Rec. Doc. 4, Unnumbered Exhibit, letter dated May 19, 2007, pp. 3-5.

When Peterson's allegations were made public, many state prisoners claimed that their rights had been violated by the Court of Appeal's procedures and sought relief from the Louisiana

4

Supreme Court. In response, the Louisiana Fifth Circuit Court of Appeal unanimously adopted an en banc resolution on September 9, 2008, which provided:

> Recommend to the Supreme Court the following possible solution to the Pro-Se Criminal Writ applications complaining that earlier applications by those same applicants had received inadequate review by this Court.
> First, we are proposing that you consider remanding each of the current applications in your court to this court with direction that they be assigned to respective three-judge panels randomly selected from five judges of this court; namely, Judges Chehardy, McManus, Wicker, Guidry and Pro Tempore Jasmine who incidentally have had no hand in the process by which this court earlier handled these multiple applicants' earlier writs in this court.
> Under this proposal, the applications will be controlled, handled and considered only by those five judges and such members of their respective personal staffs selected by them as a group, and as approved by the respective panels. Furthermore, none of the other three judges on this court will be involved in any way in consideration of the work of the three-judge panels, or conversant in any way with the five-panel judges to be assigned to handle these cases and their respective personal staff members which the five judges alone will choose to have assist them.
> We are guided in this request by a desire to avoid imposing financial or other burdens on other judges in this state who might otherwise be called upon to consider these cases out of our court.

See State v. Cordero, 993 So.2d 203, 206 (La. 2008).

In its decision on a writ application filed by one such prisoner, Sandra Cordero, the Louisiana Supreme Court adopted that resolution, holding:

> Therefore, in accordance with the Resolution of the Fifth Circuit Court of Appeal en banc, the application of Sandra Cordero is herewith transferred to the Fifth Circuit Court of Appeal for consideration according to the procedures outlined in the Fifth Circuit Court of Appeal's en banc resolution of September 9, 2008. These three-judge panels are to be insulated from all persons, other than the panel judges and their respective personal staffs. This Court also determines that the applications presently filed and pending in this Court by petitioners, raising similar claims and enumerated hereinabove should also be handled in accordance with the procedures outlined in this Order and the Fifth Circuit Court of Appeal's en banc resolution of September 9, 2008. Further, this Court also determines under its supervisory authority that the applications presently filed and pending in the Fifth Circuit Court of Appeal by those petitioners who raise similar claims should also be handled in

5

accordance with the procedures outlined in this Order and the Fifth Circuit Court of Appeal's en banc resolution of September 9, 2008.

Cordero, 993 So.2d at 205.

Plaintiff had a *pro se* post-conviction writ application denied by the Louisiana Fifth Circuit Court of Appeal during the period in which the challenged procedure was in place. Johnson v. Cain, No. 00-KH-1803 (La. App. 5th Cir. Nov. 21, 2000) (copy attached to plaintiff's complaint). He does not allege that he has sought relief from the state courts pursuant to Cordero.

### III. Analysis

The allegations set forth in Peterson's letter are undeniably troubling and, if true, evidence a shameful disregard for justice on the part of the appellate court judges who conceived of such a system and directed court staff to implement it. However, even if plaintiff's complaint is broadly construed,[2] the Court nevertheless finds that, for the following reasons, the federal complaint should be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against defendants who are immune from such relief. Any relief to which plaintiff may be entitled should instead be sought from the state courts.

### A. Parish of Jefferson

Plaintiff lists the "Parish of Jefferson" as a defendant in the caption of his complaint; however, he states no claim against the parish in the body of the complaint. Moreover, it is apparent that he cannot state a cognizable claim against the parish. Plaintiff's claims involve actions taken by the judges and employees of the Louisiana Fifth Circuit Court of Appeal. Because the parish

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

government has no authority or control over that state appellate court, any claim against the parish would clearly be frivolous.

### B. Jerrold Peterson

Plaintiff also named Jerrold Peterson as a defendant. Because Peterson was deceased at the time this action was filed, the claim against him must be dismissed. Martinez v. United States, Civ. Action No. 96-4072, 1998 WL 92248, at *2 (E.D. La. Mar. 2, 1998) ("Federal law ... relies on state law to determine if a party can be named as a defendant to a lawsuit. Louisiana law does not allow suits against the deceased."); see also Campbell v. Travelers Insurance, Civ. Action No. 06-9068, 2008 WL 145048, at *1 (E.D. La. Jan. 14, 2008).[3]

### C. Judges

Plaintiff has also named as defendants the following judges of the Louisiana Fifth Circuit Court of Appeal: Judges Fred S. Bowles, H. Charles Gaudin, Charles Grisbaum, Edward A. Dufresne, Jr., Thomas C. Wicker, Jr., Sol Gothard, James L. Canella, Thomas J. Kliebert, Thomas F. Daley, Susan M. Chehardy, Marion F. Edwards, Clarence E. McManus, and Walter J. Rothschild.

#### 1. Monetary Damages

To the extent that plaintiff is seeking an award of monetary damages against the judges, they are protected from his claims by their absolute judicial immunity.

It has long been held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are

---

[3] Further, even if Peterson had not died before this lawsuit was commenced, any claim against him would still be subject to dismissal for the reasons set forth in this opinion.

alleged to have been done maliciously or corruptly." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1871); see also Harper v. Merckle, 638 F.2d 848, 856 n.9 (5th Cir. 1981) ("[W]e can envision no situation – where a judge acts after he is approached *qua* judge by parties to a case – that could possibly spawn a successful § 1983 suit."). The United States Supreme Court has explained: "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Mireles v. Waco, 502 U.S. 9, 11 (1991). Further, judicial immunity is clearly applicable in cases, such as the instant one, brought pursuant to 42 U.S.C. § 1983. Stump v. Steward, 435 U.S. 349, 356 (1978); Pierson v. Ray, 386 U.S. 547, 554-55 (1967).

The Supreme Court has recognized only two instances in which judicial immunity is inapplicable:

> [O]ur cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

Mireles, 502 U.S. at 11-12 (citations omitted). Neither of those exceptions applies in this case.

Regarding the first exception, the Supreme Court has explained:

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.

Stump, 435 U.S. at 362. The act at issue here, the denial of plaintiff's writ application, clearly involves a function normally performed by a judge. Further, by filing the writ application, plaintiff was clearly dealing with the judges in their judicial capacities.

Regarding the second exception, there is no question that the judges had jurisdiction over plaintiff's writ application.

Plaintiff essentially proposes a third exception, opining that the judges should not be immune because they arguably acted beyond their authority by improperly delegating that authority to a single judge, Judge Dufresne, or allegedly ceding that authority to their staff. However, the United States Supreme Court has expressly rejected the contention that judicial immunity is inapplicable where a judge simply acts beyond his authority. See, e.g., Stump, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority ....").

Accordingly, for the foregoing reasons, the Court finds that the named judges are protected by their absolute judicial immunity against plaintiff's claims for monetary damages.

## 2. Declaratory Relief

Plaintiff claims that he is innocent of the crime of which he was convicted and therefore also seeks a declaration that the judges violated his constitutional rights by failing to properly review his writ application challenging his conviction. Judicial immunity does not bar declaratory relief. Holloway v. Walker, 765 F.2d 517, 525 (5th Cir. 1985). However, plaintiff's request for declaratory relief is nevertheless barred for the following reasons.

It is apparent that plaintiff's request for declaratory relief is nothing more than a veiled attempt to challenge the validity of his present confinement. Therefore, plaintiff must pursue his

challenge in a *habeas corpus* proceeding, not a federal civil rights action. Smith v. Judges of La. Fifth Circuit Court of Appeal, Civ. Action No. 08-4350, 2009 WL 78430, at *2 (E.D. La. Jan. 9, 2009); see also Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); Boyd v. Biggers, 31 F.3d 279, 283 n.4 (5th Cir. 1994). Moreover, the Court cannot construe the complaint in part as a petition for *habeas corpus*, because plaintiff has previously sought and been denied federal *habeas corpus* relief. Johnson v. Cain, Civ. Action No. 01-0119 "B"(5) (E.D. La. July 5, 2001), certificate of appealability denied, No. 01-30851 (5th Cir. Dec. 12, 2001). Before plaintiff may file a second or successive federal application for *habeas corpus* relief, he must first obtain authorization from the United States Fifth Circuit Court of Appeals. 28 U.S.C. § 2244(b)(3).

### 3. Injunctive Relief

Plaintiff also indicates in the complaint that he is seeking injunctive relief; however, he makes no proper request for injunctive relief. In any event, even if such relief were available,[4] any request for injunctive relief would be moot.

As noted, the challenged procedures have already been discontinued. Further, the Louisiana Fifth Circuit Court of Appeal did not have the last word with respect to plaintiff's state post-

---

[4] The Court notes that the Federal Courts Improvement Act of 1996, which amended 42 U.S.C. § 1983, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's official capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983; Guerin v. Higgins, 8 Fed. App'x 31 (2nd Cir. 2001); Nollet v. Justices of the Trial Court of the Commonwealth of Massachusetts, 83 F. Supp. 2d 204, 210 (D. Mass.), aff'd, 248 F.3d 1127 (1st Cir. 2000).

conviction claims. After that court denied his writ application, plaintiff sought review from the Louisiana Supreme Court, which likewise denied his claims in a decision presumably untainted by the Court of Appeal's problematic procedures. State *ex rel.* Johnson v. State, 796 So.2d 674 (La. 2001); see also State v. Cordero, 993 So.2d 203, 214 (La. 2008) (Kimball, J., concurring in the denial of rehearing) ("Many of these cases have, in fact, originally been reviewed and have had opinions written by the courts of appeal and by the seven justices of this court on original appellate review, in addition to having been reviewed on post conviction by the seven justices of this court in earlier proceedings, notwithstanding the review or lack thereof that occurred precedent to ours."). Moreover, it appears that plaintiff may now be entitled to even further state review pursuant to the procedures outlined in Cordero.

### D. Remaining Defendants

The remaining defendants in this lawsuit are the employees of the Louisiana Fifth Circuit Court of Appeal who acted pursuant to the challenged procedures adopted by the judges. Specifically, the remaining defendants are identified by plaintiff as the Clerk of Court (Peter J. Fitzgerald), the Assistant Central Staff Director (Kathi Workman), secretaries (Carol Treuting, "Tina Doe," and "Roz Doe"), law clerks (Cheryl Landrieu and Jennifer Cooper), and a research attorney (Leslie Langhetter).

Because they were acting at the express direction of the judges to assist them in carrying out their judicial functions, these defendants are likewise entitled absolute immunity with respect to any claim for monetary damages. See Mitchell v. McBryde, 944 F.2d 229, 230-31 (5th Cir. 1991); see also Johnson v. Graves, No. 92-3586, 1993 WL 82323 (5th Cir. Mar. 18, 1993). This is because a court employee who acts under the explicit instructions of a judge "acts as the arm of the judge and

11

comes within his absolute immunity," even if the employee acts "in bad faith or with malice." See Williams v. Wood, 612 F.2d 982, 985 (5th Cir. 1980); see also Clay v. Allen, 242 F.3d 679, 682 (5th Cir. 2001). Indeed, to give blanket protection to the judges while at the same time denying protection to the subordinates acting at the judges' express direction would be perverse, egregiously unfair, and ultimately unworkable. As the United States Fifth Circuit Court of Appeals observed when holding that a sheriff is absolutely immune for actions taken in the arguably similar situation where he executes a court order:

> [B]ecause judges are absolutely immune from suit for judicial actions taken pursuant to their jurisdiction, to deny similar protection to government officials executing their orders would render the officials lightning rods for harassing litigation aimed at judicial orders. We note, moreover, the unfairness of imposing liability in this context – an official charged with executing a facially valid court order has no choice but to do so. Government officials should not be required to make the Hobson's choice between disobeying the court order or being haled into court to answer for damages. To hold otherwise would require sheriffs and other court officers enforcing facially valid orders to act as pseudo-appellate courts scrutinizing the orders of judges. Such a result is obviously untenable.

Mays v. Sudderth, 97 F.3d 107, 113 (1996) (citations, footnote, quotation marks, and brackets omitted).

Moreover, to the extent that plaintiff is seeking declaratory or injunctive relief with respect to these defendants, those forms of relief are unavailable for the reasons previously discussed.

### E. State Law Claims

Plaintiff indicates in the complaint that he is also asserting claims under state law. However, if his federal claims are dismissed as recommended, it is appropriate for the Court to decline to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court

has dismissed all claims over which it has original jurisdiction."); see also Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's federal claims be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary against damages defendants who are immune from such relief.

It is **FURTHER RECOMMENDED** that plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 23rd day of March, 2009.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

13